**SECREST, Plaintiff-Appellee, v. SECREST a. k. a. Higgins etc., Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21981. Decided November 27, 1950.

George D. Rager, A. T. Wincek, Cleveland, for plaintiff-appellee.

George C. Mulvihill, Neil W. McGill, Cleveland, for defendants-appellants.

## OPINION

By SKEEL, PJ.

This appeal comes to this court on questions of law and fact.

The plaintiff filed her petition in the Common Pleas Court of Cuyahoga County, alleging that prior to May 11, 1945, she was the owner of a house and lot known as 5974 Deering Avenue, Parma Heights, Ohio; that before said date she entered into a verbal contract with the defendant, Elsie Lamona Higgins, then known as Elsie Lamona Secrest, and plaintiff's son, John Walter Secrest, now deceased, the said son and defendant Elsie Lamona Higgins then being husband and wife, that in and for the consideration of support, maintenance and care during the remainder of her life (she then being 77 years of age) and at her demise to provide a decent burial and for the further consideration of $3000.00 she would and did deed said property to her said son and daughter-in-law. It is further alleged that said defendant, Elsie Lamona Higgins and plaintiff's son, executed a mortgage to the Society for Savings to secure a loan of $4000.00 to raise the funds necessary to carry out the agreement and that after the property was deeded to the defendant Elsie Lamona Higgins and the plaintiff's son, now deceased, this plaintiff continued to live with them as she had since the date of their marriage in 1936. That upon the delivery of the deed as above set forth this plaintiff's son paid the $3000.00 as agreed.

She further alleges that her son died July 28, 1947 and that the defendant, Elsie Lamona Higgins thereafter married John Higgins (a party defendant herein) on October 30, 1948. That the defendant, Elsie Lamona Higgins inherited through the will of her deceased husband his one-half interest in said property so that by said inheritance she became the holder of the legal title thereof and after her marriage to John Higgins she, on November 4, 1948, deeded to him a one-half interest in said property. That the plaintiff continued to live and was furnished support and care after the death of her son by the defendant, Elsie Lamona Higgins, until her marriage to defendant, John Higgins, and that she continued to receive care and support as before, subsequent to said marriage, until May 7, 1949, when she was forcefully ejected from the property and since said date the defendants have failed to carry

out their obligation of support, have removed her furniture from the property and now enjoy the exclusive use and benefit thereof.

That the conduct of the defendants constitutes a repudiation of the agreement between the plaintiff and her deceased son and the defendant, Elsie Lamona Higgins. Wherefore she seeks to cancel and set aside the deed of conveyance and asks judgment for use and occupancy of the property and for certain additional sums which she claims to have loaned her son and the defendant, Elsie Lamona Higgins.

The defendant, John Higgins, by separate answer admits his marriage to Elsie Lamona Secrest and the transfer to him by her of a one-half interest in said property. He denies that any force was used on May 7, 1949, to eject the plaintiff from the property and denies all of the other claims of the plaintiff. He then affirmatively alleges that in addition to other valuable considerations for the transfer to him of a one-half interest in said property he assumed and agreed to pay the balance due on the $4000.00 mortgage held by the Society for Savings against said property. Before trial he paid off this mortgage in the approximate sum of $3100.00.

The defendant, Elsie Lamona Higgins, by separate answer admits that she and her first husband received a deed for the property located at 5974 Deering Avenue, Parma Heights, Ohio, from the plaintiff and thereby became the owners thereof about May 11, 1945; that her first husband (plaintiff's son) died July 28, 1947; that she married the defendant, John Higgins, as alleged by plaintiff and deeded to him a one-half interest in said property. This defendant specifically denies that she entered into an agreement prior to May 11, 1945, and alleges that the plaintiff's deed of said property as above alleged was made pursuant to an agreement with her first husband the consideration for which was the payment of the balance due on a mortgage then owed the Society for Savings and $3406.17 paid in cash.

The evidence though in conflict in some particulars, establishes the following facts: In 1927 the plaintiff and her husband purchased the lot now known as 5974 Deering Avenue and constructed thereon a pre-fabricated Sears, Roebuck house at a total cost of about $8500.00; they lived in the premises until the death of her husband in 1933. Thereafter her daughter and her husband (Conrad) lived with plaintiff until 1936. The Conrads made the payments on the mortgage, paid the taxes and up-keep and furnished food and other necessities for the plaintiff. During the period her son-in-law, Conrad, borrowed $2500.00 from plaintiff which was never paid back and which debt was discharged in a voluntary bank-

ruptcy proceedings. When the Conrads moved out in 1936 the plaintiff's son, Walter, married defendant, Elsie Lamona Secrest (now known as Elsie Lamona Higgins) and they went to live with plaintiff on about the same basis as the Conrads. At this time the plaintiff was granted a loan of $1600.00 secured by mortgage on the property, and her son Walter Secrest, became a co-signer on the note. This arrangement continued until the early part of 1945 when Walter Secrest and his wife were considering moving to the country. Plaintiff who was then 77 years old, offered to sell them the property "cheap" as an inducement to stay. The price of $3000.00 which is admittedly low, was the plaintiff's own proposition. The record shows the plaintiff testified as follows on this subject (pages 114 and 115):

"Q. When was that Nana? . . Well, do you know how long it was before you—let me put it this way: during the time Walter and Mona lived with you, to refresh your recollection, was there any discussion between Walter and Mona, in your presence, or directed to you, about their buying a place out in the country?

"A. Well, Walter said—yes, he mentioned, he said they wanted to buy a place in the country.

"Q. What did you say?

"A. I said, 'Well, I don't see why you want to buy a place in the country; I wouldn't like to see you go out of here and I would sell you the place cheap.'

"Q. You said you would sell the place cheap?

"A. Yes.

"Q. And was Mona there?

"A. Yes, she was there.

"Q. What else was said? Tell the judge in your own words what was said there.

"A. Well, I said, 'I'll sell you the place for $3000.00.' And he says 'Alright, ma.' And then he said, 'and we will keep you as long as you live.' And Mona said, 'I sanction that.'

"Q. Were those her exact words?

"A. Those were the exact words she said.

"Q. Tell us what happened next? Did you have any further conversation about selling the house and the agreement that Walter stated in Mona's presence to keep you?

"A. That is about all, I guess.

"Q. Were you asked to go down to the bank at any time after that?

"A. Oh, sure. They set the date to go down to the bank.

"Q. Who is 'they'?

"A. Walter and Mona."

Neither the plaintiff nor Walter Secrest and his wife consulted a lawyer about this transaction but went to the Society for Savings bank where a sales agreement was drawn, which contract provided that it contained the entire agreement between the parties and in which no mention was made of the alleged obligation of support. The deed was prepared, an escrow agreement entered into and a loan of $4000.00 to provide funds with which to complete the sale was procured and the transaction concluded. The plaintiff received the proceeds of the loan, less the balance due on a mortgage held by the Society for Savings in the sum of $511.17 and the cost of the escrow fees, revenue stamps and recording fee, the check being in the sum of $3406.17. She deposited $2800.00 in a savings account with the Society for Savings upon which account Walter Secrest was given the right to draw with balance to the survivor. She also bought savings bonds, expending therefor about $200.00. The balance of about $400.00 is not accounted for in the record. The plaintiff thereafter gave $1000.00 to her grand-daughter and also loaned money to Walter Secrest for repairs to the house.

After this transaction was concluded the parties continued to live together just as they had for the nine years preceding the purchase of the property by Walter Secrest and his wife.

On July 28, 1947, John Walter Secrest died. By his will the defendant, Elsie Lamona Secrest inherited her husband's one-half interest in the property whereby she became the sole owner of the property. Before the death of her husband, the defendant, Elsie Lamona Secrest had to give up her work as Supervisor of Nurses at City Hospital to take care of her husband who was sick for about a year before his death, and the plaintiff who had suffered a broken leg. All income therefore stopped, and the expense of John Walter Secrest's last illness and that of his mother depleted the savings of the parties so that after the death of her husband, the defendant, Elsie Lamona Secrest, although she went back to work, had a hard time continuing to support the household. It was during this period that upon the insistence of the plaintiff, investigations of homes for the aged were made and an application for an old age pension was filed. The evidence of what took place about the pension is not material nor does it have any bearing on the issues here presented and will therefore not be further discussed, except to say that as a part of an appeal from the refusal to grant plaintiff a pension for the reason that she had sold her property to her son and daughter-in-law for less than it was in fact worth, the defendant, Elsie Lamona Secrest was compelled to sign a written agreement

that she would furnish the plaintiff a home and support for the remainder of her life and a decent burial upon her death. The consideration for such agreement being the granting of some financial aid to the plaintiff.

The defendant, Elsie Lamona Secrest thereafter on October 30, 1948, married John Higgins, defendant herein, and shortly thereafter on Nov. 4, 1948, she deeded a one-half interest in the property to him, upon his agreement to assume payment of the balance due on the mortgage. The defendant paid off the balance due on this mortgage of about $3100.00 shortly after the one-half interest was deeded to him. The plaintiff continued to live with the defendants, being provided for as before, until May 7, 1949.

During this period of time the plaintiff was well treated as is disclosed by her own testimony.

On May 7, 1949, while she was getting ready to go to her grand-daughter's home to stay a few days, because the Higgins' were expecting company from out of the city, the plaintiff made some degrading and slanderous charges involving the character of Elsie Lamona Higgins to her husband, John Higgins. Mrs. Higgins was then pregnant and the defendant, John Higgins, was concerned lest the excitement caused by plaintiff's charges would be harmful to his wife. He directed his wife to go to another part of the house and then put the plaintiff's bundle of clothes which she had ready to take with her, out on the front porch. The plaintiff followed him to the porch. The defendant, John Higgins, then walked inside and locked the door. In about one-half hour the granddaughter's husband, Mr. Jim Shumway, called for the plaintiff and took her away. Since that time the plaintiff has not returned to the house at 5974 Deering Avenue, nor have the defendants, or either of them, furnished the plaintiff with care or support.

The plaintiff does not allege nor is there any evidence which would even tend to support either active or constructive fraud on the part of the defendants in securing title to the property here under consideration. Likewise, there is not a bit of evidence that the defendant, John Higgins, knew of any promise of care and support made to the plaintiff either by her deceased son, John Walter Secrest, or Elsie Lamona Higgins. Until his death, the son carried out his promise to support the plaintiff. After his death the defendant Elsie Lamona Higgins carried on to the best of her ability. And since her marriage to defendant, John Higgins, even though he had no knowledge of any legal obligation on the part of his wife to furnish care and support to the plaintiff, yet the plaintiff

was well provided for until her own conduct was responsible for her eviction from the house.

The claim of the plaintiff that her eviction constituted a constructive fraud upon which to found an action to rescind the sale of the property, cannot be sustained nor can it be said that the failure of the defendant, Elsie Lamona Higgins, to continue to carry out the obligation of support constitutes such default on her part or failure of consideration as to give the plaintiff the legal right to rescind the transfer of title.

The evidence discloses that the plaintiff was of sound mental capacity and knew exactly what she was doing. In fact, as indicated above, she, and not the defendant Elsie Lamona Higgins, and the plaintiff's son, made the offer to sell which they accepted on her terms. Likewise there is no evidence, from the standpoint of the close relationship of the parties, that undue influence was used to induce the plaintiff to sell her property. The plaintiff offered to sell the property to the grantees "cheap" and set the price at $3000.00. She received almost $4000.00. As a part of this transaction the son, John Walter Secrest, now deceased, promised to continue to support the plaintiff during her life, just as he had been doing since 1936, although such promise was not recited in the deed as a condition of forfeiture. It seems equally clear that the defendant, Elsie Lamona Higgins gave assent to such promise and is now legally bound to continue the plaintiff's support.

A conveyance, however, will not be set aside for the failure to keep a promise with respect to future conduct given as part consideration of an executed sale, where fraud is not claimed or established by the evidence.

In 6 O. Jur., Sec. 28, page 535 the author says:

"Executed Contracts Relating to Realty: In the absence of fraud, a deed for real estate will not be set aside on the sole ground that the promises and agreements which entered into its execution and which were to be performed in the future, have not been performed. So, equity will not interfere, ordinarily, where a grantor has seen fit to accept a promise on the part of his grantee for the performance of certain acts, without specifically providing in the deed that failure to perform shall be a condition of forfeiture or in some way affect the validity of the deed, or entitle him to a reconveyance." * * *

The same rule is applicable here as would apply if one were to make a sale of goods on credit. If the price is not paid

when due, unless the sale was induced by fraud, the law is too well settled to require the citing of authority, that the seller's remedy is an action for the price and not the return of the goods.

The cases relied upon by the plaintiff do not support her contention under the clearly established facts of this case. The case of **Tracy v. Sackett, 1 Oh St 54,** was one involving fraud and duress in dealing with a person of weak understanding and therefore liable to imposition. All of the other cases are to the same effect and are not helpful in coming to a correct conclusion on the facts as clearly established in the case before us.

We cannot lose sight of the fact, however, that this is a proceeding in equity in which the court must be guided by principles of equity giving consideration to the justice of the cause when taking into account the circumstances of the case and the relationship of the parties.

In the case of Massachusetts Mutual Life Ins. Co. v. Jeckell, 124 Fed. 2d, 339, the court held that in the absence of express contract a lien based on the fundamental maxims of equity may be implied and declared by a court of equity out of general consideration of right and justice as applied to the relationship of the parties and the circumstance of their dealing.

Likewise, in the case of **Klaustermeyer v. Trust Co., 89 Oh St 142,** 105 N. E. 287, the court impressed an equitable lien on certain securities where the circumstances were such that there was no adequate remedy at law. In this case a director of The Euclid Avenue Trust Company borrowed $5000.00 from the Garfield Bank of Cleveland and loaned it to the Trust Company upon an agreement that securities would be pledged to secure the debt. The loan was necessary because of the unsound condition of the Trust Company. When Klaustermeyer delivered the money to the Trust Company he was in a hurry and said he would pick up the securities later. Before he did, however, there was an assignment for the benefit of creditors. In a proceeding in equity seeking the delivery of the securities the court said:

"1. In a transaction founded on contract, express or implied, there being no adequate remedy at law for its breach, equity will presume the parties to have done what under the contract and in good conscience they should have done.

"2. When one party to such contract has fully performed his part of the contract for the benefit of the other party, the second party will not be permitted to defend against the first party's right of redress in equity by a defense based on the

second party's own default. See also: **Compton v. Wabash, St. L. Ry. Co. 45 Oh St 592,** and Corpus Juris Secundum Vol. 53, p. 843 of parag. 4, sub-sec. c."

It is clear from the facts that in deeding the property to the defendant, Elsie Lamona Higgins, and her son, now deceased, she was divesting herself, for all practical purposes, of all of her property, save that which she received from her son, to-wit, the sum of about $3400.00. The manner in which the plaintiff used this money for family purposes and equalizing the disposition of her property to those who were the natural objects of her bounty rather than holding it for her own personal security shows a complete assumption on her part that she would be taken care of the rest of her life, the same as she had for the past nine years. In other words, the undisputed facts all point to her complete reliance on her son's promise for her future support.

The justice of the cause requires, therefore, that the obligation of care and support which is due her from Elsie Lamona Higgins, be carried out and to secure the performance of such obligation the rules of equity will impose a lien on the remaining interest of Elsie Lamona Higgins in the property, not only to the extent of what is reasonably necessary from the date of this decree but also for the reasonable value of her support since May 7, 1949, and the necessary expenses of burial after she departs this life.

Such a decree does not create different obligations than those that were assumed by the parties when the plaintiff deeded the property to her son and Elsie Lamona Higgins. It preserves to the defendants the benefits derived for the purchase of such property and secures to the plaintiff the performance of the executory promise of support. The defendant, John Higgins, now being the owner of a one-half interest which interest was acquired by purchase without knowledge of the equitable lien of the plaintiff, is not effected by this decree. The defendant, Elsie Lamona Higgins, is protected in her interest acquired by purchase and inheritance, subject to the lien securing plaintiff's right of support.

In the event that the parties are unable to agree within two weeks from the date of this entry on the amount that should be paid for the failure to provide the plaintiff support since May 7, 1949, until the date of this entry and to provide for such support thereafter either directly or in place thereof, the payment of a lump sum or monthly payments that seem consonant with the circumstances, the court will set the case for the taking of additional evidence from which to

determine such amount as would be just and equitable under all the circumstances to provide such support.

Decree may enter accordingly. Exc. O. S. J.

McNAMEE, J, HURD, J, concur.